FILED
JUL 20 2017
MARY C. LOEWENGUTH, CLERK
WESTERN DISTRICT OF NY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

v.                                                                  16-CR-41

GREGORY GIBBONS,

                Defendant.

---

## PLEA AGREEMENT

The defendant, GREGORY GIBBONS, and the United States Attorney for the Western District of New York (hereinafter "the government") hereby enter into a plea agreement with the terms and conditions as set out below.

### I. THE PLEA AND POSSIBLE SENTENCE

1.    The defendant agrees to plead guilty to Count 1 of the Indictment, which charges a violation of Title 18, United States Code, Section 1349 (conspiracy to commit wire fraud affecting a financial institution), for which the maximum possible sentence is a term of imprisonment of 30 years, a fine of $1,000,000, a mandatory $100 special assessment and a term of supervised release of up to 5 years. The defendant understands that the penalties set forth in this paragraph are the maximum penalties that can be imposed by the Court at sentencing.

2.    The defendant will also admit the Forfeiture Allegation of the Indictment which alleges that $727,070.20 is subject to forfeiture to the United States pursuant to Title

18, United States Code, Section 981(a)(1)(C) and Section 982(a)(2), and Title 28, United States Code, Section 2461(c).

3. The defendant understands that, if it is determined that the defendant has violated any of the terms or conditions of supervised release, the defendant may be required to serve in prison all or part of the term of supervised release, up to three years, without credit for time previously served on supervised release. As a consequence, in the event the defendant is sentenced to the maximum term of incarceration, a prison term imposed for a violation of supervised release may result in the defendant serving a sentence of imprisonment longer than the statutory maximum set forth in Paragraph 1 of this agreement.

## II. ELEMENTS AND FACTUAL BASIS

4. The defendant understands the nature of the offense set forth in paragraph 1 of this agreement and understands that if this case proceeded to trial, the government would be required to prove beyond a reasonable doubt the following elements of the crime:

   a. Two or more persons, in some way or manner, agreed to accomplish a common and unlawful plan to commit a fraud crime listed in Title 18, Chapter 63, that is Title 18, U.S.C. § 1343 (wire fraud).

   b. The defendant knew the unlawful purpose of the plan and willfully joined in it.

   c. The scheme affected a financial institution.

## FACTUAL BASIS

5.  The defendant and the government agree to the following facts, which form the basis for the entry of the plea of guilty including relevant conduct.

   a. Beginning in or about June 2008 and continuing until in or about February 2009, the defendant, GREGORY GIBBONS ("GIBBONS"), in the Western District of New York and elsewhere, in connection with mortgage loan transactions, did knowingly and willfully conspire with Alagi Samba ("Samba"), Laurence Savedoff ("Savedoff"), Julio Rodriguez ("Rodriguez"), Tina Brown ("Brown"), Daniel Badu ("Badu") and others, to devise a scheme to defraud victims by causing fraudulent loan documents to be mailed to and from a title company in Western New York and by causing funds to be wired into an attorney escrow account and other bank accounts. This scheme to defraud affected M&T Bank, a federally insured financial institution in the Western District of New York, and other federally insured financial institutions.

   b. Defendant GIBBONS, a mortgage broker in New York State, owned Radius Mortgage Services, LLC and GIBCO, LLC, mortgage brokerage companies that were located and registered to do business in New York State.

   c. From in or about June 2008 to in or about August, 2008, defendant Gibbons served as the mortgage broker for Badu in the purchase of a property located at 814 Faile Street, Bronx New York and assisted him in obtaining a mortgage loan for that property. Defendant GIBBONS was aware that Badu was employed as a home health aide and that he would not qualify for the loan based on his actual income. Defendant GIBBONS requested and obtained Badu's true Social Security Number (SSN), and business certificates from Samba ("Samba"), the realtor representing Badu in the purchase of this property.

   d. Defendant GIBBONS altered and created documents in order to make Badu appear to qualify for a mortgage loan for the property. Defendant GIBBONS created a loan application that listed Eagle Eyes, a company owned by Badu, as his employer, and indicated that he was a research ophthalmologist. Defendant GIBBONS knew that Badu did not receive the stated income from Eagle Eyes and that he was not a research ophthalmologist. The monthly income listed on the loan application was false. The supporting income and asset documentation provided as part of the loan application, including false paystubs, false W-2s, false verifications of employment and false bank accounts, were created by GIBBONS.

e. Defendant GIBBONS sent an application for Badu for an FHA loan (a loan insured by the Federal Housing Administration) and the false supporting income, employment and asset documentation to TFS, a mortgage bank.

f. TFS used InSouth Bank, a federally insured financial institution, as its warehouse line of credit in order to fund loans. InSouth utilized the Federal Home Loan Bank (FHLB) of Cincinnati as the intermediary between InSouth and M&T Bank when conducting wire fund transactions. All FHLB Cincinnati wire transfers are processed through the Funds Transfer Department located in Cincinnati Ohio. TFS had a correspondent lending agreement with M&T Bank and sold loans to M&T Bank.

g. Based on the false income, asset and employment information, a mortgage loan in the amount of $574,543.00 was approved for Badu by TFS. The loan was sold by TFS to M&T Bank on or about September 3, 2008. On that date, M&T Bank wired $580,202.89 from its account ending 0811 in Buffalo, New York to TFS via InSouth Bank account ending in 3002 which utilized the Federal Home Loan Bank of Cincinnati to process its wires through the state of Ohio.

h. M&T received only 6 mortgage payments for this loan before it went into default.

i. The intended loss associated with this loan was approximately $574,543.00.

## RELEVANT CONDUCT

j. In furtherance of the scheme, beginning on or about June, 2008 and continuing through February, 2009, defendant GIBBONS, acting in his capacity as a mortgage broker, conspired with Samba, Badu, Savedoff, Rodriguez, Brown and others to arrange for additional mortgage loans to be obtained on behalf of borrowers using fraudulent income, employment and asset documentations on the properties listed in **CHART A** below. Defendant GIBBONS created false applications and documents on behalf of the borrowers. Based on the false representations made in each of the respective loan applications listed in the chart below, the financial institutions listed below issued loans in the amounts specified. The loan applications affiliated with the loans in the below chart were submitted by Savedoff and/or GIBBONS to United Abstract and TFS, who in turn submitted the loan applications to the below-listed victim financial institutions.

## CHART A

| PROPERTY | CLOSING DATE | LOAN AMOUNT | VICTIM BANK |
|---|---|---|---|
| 1732 UNIONPORT RD BRONX NY | 6/19/2008 | $626,762 | M&T BANK |
| 4087 EDSON AVE BRONX NY | 7/31/2008 | $639,957 | M&T BANK |
| 949 EAST 231ST ST BRONX NY | 9/26/2008 | $570,201 | SUNTRUST BANK |
| 1728 UNIONPORT RD BRONX NY | 9/30/2008 | $569,415 | BANK OF AMERICA NA (fka COUNTRYWIDE) |
| 816 FAILE ST BRONX NY | 10/21/2008 | $578,985 | M&T BANK JPMORGAN CHASE BANK NA |
| 823 EAST 218TH ST BRONX NY | 10/23/2008 | $697,308 | METLIFE HOME LOANS LLC JPMORGAN CHASE BANK NA |
| 3985 CARPENTER AVE BRONX NY | 2/12/2009 | $542,836 | CITIBANK NA |

k. The total loss amount, including relevant conduct, was $4,800,007.

## III. SENTENCING GUIDELINES

6. The defendant understands that the Court must consider but is not bound by the Sentencing Guidelines (Sentencing Reform Act of 1984).

## BASE OFFENSE LEVEL

7. The government and the defendant agree that Guidelines §2B1.1(a)(1) applies to the offense of conviction and provides for a base offense level of **7**.

## SPECIFIC OFFENSE CHARACTERISTICS
## U.S.S.G. CHAPTER 2 ADJUSTMENTS

8. The government and the defendant agree that the following specific offense characteristic does apply:

   a. §2B1.1(b)(1)(J): the total loss (including relevant conduct) was in excess of $3,500,000 (namely, $4,800,007) and thus there is an **18** offense level increase.

## ROLE IN THE OFFENSE
## U.S.S.G. CHAPTER 3 ADJUSTMENTS

9. The government and the defendant agree that the following adjustment to the base level offense does apply:

   a. the **2** level upward adjustment of Guidelines § 3B1.3 (abuse of trust/special skill).

## ADJUSTED OFFENSE LEVEL

10. Based on the foregoing, it is the understanding of the government and the defendant that the adjusted offense level for the offense of conviction is **27**.

## ACCEPTANCE OF RESPONSIBILITY

11. At sentencing, the government agrees not to oppose the recommendation that the Court apply the two-level downward adjustment of Guidelines § 3E1.1(a) (acceptance of responsibility) and further agrees to move the Court to apply the additional one (1) level downward adjustment of Guidelines § 3E1.1(b), which would result in a total offense level of **24**.

6

## CRIMINAL HISTORY CATEGORY

12. It is the understanding of the government and the defendant that the defendant's criminal history category is **I**. The defendant understands that if the defendant is sentenced for, or convicted of, any other charges prior to sentencing in this action the defendant's criminal history category may increase. The defendant understands that the defendant has no right to withdraw the plea of guilty based on the Court's determination of the defendant's criminal history category.

## GUIDELINES' APPLICATION, CALCULATIONS AND IMPACT

13. It is the understanding of the government and the defendant that, with a total offense level of **24** and a criminal history category of **I**, the defendant's sentencing range would be a term of imprisonment of **51** to **63** months, a fine of **$10,000** to **$1,000,000**, and a period of supervised release of **2** to **5** years. Notwithstanding this, the defendant understands that at sentencing the defendant is subject to the maximum penalties set forth in paragraph 1 of this agreement.

14. The government and the defendant agree to the Sentencing Guidelines calculations set forth in this agreement and neither party will advocate or recommend the application of any other Guideline, or move for any Guidelines departure, or move for or recommend a sentence outside the Guidelines, except as specifically set forth in this agreement. A breach of this paragraph by one party will relieve the other party of any agreements made in this plea agreement with respect to sentencing motions and recommendations. A breach of this paragraph by the defendant shall also relieve the government from any agreements to dismiss or not pursue additional charges.

15. The defendant understands that the Court is not bound to accept any Sentencing Guidelines calculations set forth in this agreement and the defendant will not be entitled to withdraw the plea of guilty based on the sentence imposed by the Court.

## IV. STATUTE OF LIMITATIONS

16. In the event the defendant's plea of guilty is withdrawn, or conviction vacated, either pre or post-sentence, by way of appeal, motion, post-conviction proceeding, collateral attack or otherwise, the defendant agrees that any charges dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government and further agrees not to assert the statute of limitations as a defense to any other criminal offense which is not time barred as of the date of this agreement. This waiver shall be effective for a period of six months following the date upon which the withdrawal of the guilty plea or vacating of the conviction becomes final.

## V. GOVERNMENT RIGHTS AND RESERVATIONS

17. The defendant understands that the government has reserved the right to:

   a. provide to the Probation Office and the Court all the information and evidence in its possession that the government deems relevant concerning the defendant's background, character and involvement in the offense charged, the circumstances surrounding the charge and the defendant's criminal history;

   b. respond at sentencing to any statements made by the defendant or on the defendant's behalf that are inconsistent with the information and evidence available to the government;

   c. advocate for a specific sentence consistent with the terms of this agreement, including the amount of restitution and/or fine and the method of payment; and

   d. modify its position with respect to any sentencing recommendation or sentencing factor under the Guidelines including criminal history category, in the event that subsequent to this agreement the government receives previously unknown information, including conduct and statements by the defendant subsequent to this agreement, regarding the recommendation or factor.

18.  At sentencing, the government will move to dismiss the open counts of the Indictment in this action as against the defendant.

## VI. RESTITUTION AND FINANCIAL PENALTY PROVISIONS

19.  The defendant understands, and the parties agree, that the Court must require restitution to the victim financial institutions referenced in paragraph 4 and CHART A, in the amounts of the loans listed in paragraph 4 and CHART A, less any amount the respective financial institutions have recovered from the sale of the properties listed in paragraph 4 and CHART A, or the fair market value the financial institutions are anticipated to recover based on the future sale of the properties, as part of the sentence, pursuant to Sentencing Guidelines Section 5E1.1 and Title 18, United States Code, Sections 3663A.

20.  The defendant agrees to disclose fully and completely all assets in which the defendant either has any property interest or over which the defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party. The defendant agrees to make complete financial disclosure to the United States by truthfully executing a sworn financial statement by the deadline set by the United States, or if no deadline is set, no later than two weeks prior to the date of sentencing. The defendant agrees to authorize the release of all financial information requested by the United States, including, but not limited to, executing authorization forms for the United States to obtain tax

information, bank account records, credit history, and social security information. The defendant agrees to discuss or answer any questions by the United States relating to the defendant's complete financial disclosure. The defendant will submit to an examination under oath and/or a polygraph examination conducted by an examiner selected by the U.S. Attorney's Office on the issue of the defendant's financial disclosures and assets, if deemed necessary by the U.S. Attorney's Office. The defendant certifies that the defendant has made no transfer of assets in contemplation of this prosecution for the purpose of evading or defeating financial obligations that are created by the agreement and/or that may be imposed upon the defendant by the Court. In addition, the defendant promises that the defendant will make no such transfers in the future.

21. The defendant agrees that any financial records and information provided by the defendant to the Probation Office, before or after sentencing, may be disclosed to the United States Attorney's Office for use in the collection of any unpaid financial obligation.

22. The defendant understands and agrees that the Court, at the time of sentencing, will order that all monetary penalties imposed at that time (including any fine, restitution, or special assessment imposed in accordance with the terms and conditions of this plea agreement) are to be due and payable in full immediately and subject to immediate enforcement by the United States. The defendant understands and acknowledges that any schedule of payments imposed by the Court at the time of sentencing is merely a minimum schedule of payments and does not, in any way, limit those methods available to the United States to enforce the judgment.

23. The defendant agrees that any funds and assets in which the defendant has an interest, which have been seized or restrained by the government or law enforcement as part of the investigation underlying this plea agreement, and not subject to forfeiture, will be used to offset any judgment of restitution and fine imposed pursuant to this plea agreement, or to satisfy any debts owed by the defendant to the United States and/or agencies thereof.

## VII. APPEAL RIGHTS

24. The defendant understands that Title 18, United States Code, Section 3742 affords a defendant a limited right to appeal the sentence imposed. The defendant, however, knowingly waives the right to appeal and collaterally attack any component of a sentence imposed by the Court which falls within or is less than the sentencing range for imprisonment, a fine and supervised release set forth in Section III, ¶ 13, above, notwithstanding the manner in which the Court determines the sentence. In the event of an appeal of the defendant's sentence by the government, the defendant reserves the right to argue the correctness of the defendant's sentence. The defendant further agrees not to appeal a restitution order which does not exceed the amount set forth in Section VI of this agreement.

25. The defendant understands that by agreeing not to collaterally attack the sentence, the defendant is waiving the right to challenge the sentence in the event that in the future the defendant becomes aware of previously unknown facts or a change in the law which the defendant believes would justify a decrease in the defendant's sentence.

26. The government waives its right to appeal any component of a sentence imposed by the Court that falls within or is greater than the sentencing range for

imprisonment, a fine and supervised release set forth in Section III, ¶ 13, above, notwithstanding the manner in which the Court determines the sentence. However, in the event of an appeal from the defendant's sentence by the defendant, the government reserves its right to argue the correctness of the defendant's sentence.

## VIII. COOPERATION

27. The defendant will cooperate with the government by providing complete and truthful information regarding the defendant's knowledge of any and all criminal activity, whether undertaken by the defendant or others, in any way involving or related to wire fraud, mail fraud, and conspiracy to commit mail fraud and wire fraud. The defendant's cooperation shall also include submitting to interviews by government attorneys and agents, as well as testifying truthfully and completely before grand juries and at such pre-trial and trial proceedings as the government shall deem necessary, including but not limited to pre-trial hearings, trials, sentencing hearings and forfeiture proceedings.

28. The defendant's cooperation shall also be provided to any local, state or federal authorities designated by the government and who have agreed to abide by the terms of the "Cooperation" section of this agreement. The defendant's obligation to testify truthfully and completely shall extend to proceedings in local, state and federal courts in jurisdictions which have agreed to abide by this agreement.

29. In exchange for the defendant's plea of guilty and cooperation as set forth in this agreement, the defendant will not be prosecuted by the Office of the United States Attorney for the Western District of New York for any other federal criminal offenses committed in the Western District of New York in any way involving or related to wire fraud, mail fraud, and conspiracy to commit mail fraud and wire fraud, committed up to the date of this agreement and about which the defendant provides complete and truthful information.

30. Further, no testimony, statements or tangible objects provided by the defendant in compliance with this agreement (or any information directly or indirectly derived therefrom) will be used against the defendant in any criminal case, except a prosecution for perjury or making false statements.

31. Upon condition that the defendant has fully complied with all terms and conditions of this agreement, should the government determine that the defendant has provided substantial assistance in the investigation or prosecution of other persons who have committed offenses, the government will move the Court at sentencing to depart downward from the Guidelines 4 levels as provided for in Guidelines § 5K1.1, which, if granted by the Court, would result in a total offense level of 20 and a sentencing range of 33 to 41 months imprisonment. The defendant understands that the decision to make such a motion is within the sole discretion of the government and that the decision to grant such a motion, and the extent of any downward departure, are matters solely within the discretion of the Court.

32. This agreement does not preclude the prosecution of the defendant for perjury or making false statements in the event the defendant testifies falsely or provides false

information to the government. This agreement is not contingent upon the filing of charges against, the return of an Indictment against, or the successful prosecution of, any person or entity.

33.     It is a condition of this agreement that, up through the date of the defendant's sentencing, the defendant shall commit no further crimes. It is also a condition of this agreement that the defendant must, at all times, give complete, truthful and accurate information and testimony and not withhold information from the government or refuse to testify truthfully and completely. Should the defendant be sentenced prior to the completion of the defendant's cooperation with the government, the defendant's obligation to comply with the cooperation provisions of this agreement extends past sentencing.

34.     In the event the government believes the defendant has violated any of the conditions of the "Cooperation" section of this agreement, the government, in addition to its other rights as set forth in the "Cooperation" section of this agreement, reserves the right: (a) to modify any recommendation the government agreed to make in a motion pursuant to Guidelines § 5K1.1; and (b) to petition the Court, before or after sentencing, for an order declaring that the defendant has breached the "Cooperation" section and relieving the government of its obligations under this section.

35.     In the event the government petitions the Court to declare that the defendant has breached the "Cooperation" section of this agreement, whether the defendant has violated any of the conditions of the "Cooperation" section shall be determined by the Court in an appropriate proceeding at which any disclosures and documents provided by the defendant

shall be admissible and at which the government shall be required to establish any violation by a preponderance of the evidence. In order to establish any violation by the defendant, the government is entitled to rely on statements and information given by the defendant pursuant to this agreement.

36. If the "Cooperation" section of this agreement is declared breached by the Court:

   a. the defendant shall thereafter be subject to prosecution for any federal criminal violations of which the government has knowledge, including but not limited to, perjury and obstruction of justice;

   b. the government may withdraw any motion filed pursuant to Sentencing Guidelines § 5K1.1;

   c. the defendant has no right to withdraw the plea of guilty;

   d. the defendant shall waive all rights under Fed. R. Crim. P. 11(f), Fed. R. Evid. 410 and Sentencing Guidelines § 1B1.8 and the defendant expressly agrees that all statements, testimony and tangible objects provided by the defendant (with the exception of statements made in open court during guilty plea proceedings), whether prior or subsequent to this agreement, can be used directly and indirectly in any and all criminal proceedings against the defendant; and

   e. the defendant agrees that any charges that were dismissed pursuant to this agreement shall be automatically reinstated upon motion of the government. Furthermore, the defendant agrees not to assert the statute of limitations as a defense to any criminal offense which is not time barred as of the date of this agreement. This waiver shall be effective for a period of six months following the date upon which the Court's order declaring the agreement breached by the defendant becomes final.

37. At the time of sentencing, the government will make the nature and extent of the defendant's compliance with this agreement known to the Court. The government and the defendant will request that sentencing be adjourned until full satisfaction by the defendant

of the terms of this agreement. In the event the defendant is sentenced prior to the completion of the defendant's cooperation with the government, the government reserves the right to modify any recommendation to be made by the government at sentencing pursuant to Guidelines § 5K1.1.

38. The defendant's attorney is permitted to be present at any time the defendant is questioned or interviewed by government agents regarding the matters set forth in this agreement.

## IX. FORFEITURE PROVISIONS

39. As a condition of the plea, the defendant agrees to immediately forfeit all of the defendant's right, title and interest to any and all property which is subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c). That property includes:

**MONETARY JUDGMENT:**
The sum of One Hundred Sixty Five Thousand and Nine Hundred Thirty One Dollars and Fifty Two Cents ($165,931.52) in United States currency, to be evidenced by a judgment issued by this Court against the defendant. Said judgment will be referenced in the <u>PRELIMINARY and FINAL ORDER OF FORFEITURE</u> and will provide for interest to accrue at the prevailing rate per annum and serve as a lien against the defendant's property, wherever situated, until fully satisfied.

40. The defendant agrees that if any of the property described above, as a result of any act or omission of the defendant cannot be located, has been transferred or sold to, or deposited with, a third person; has been placed beyond the jurisdiction of the Court; has been

substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; the United States of America shall be entitled to forfeiture of substitute property of the defendant pursuant to Title 21, United States Code, Section 853(p).

41. After the acceptance of the defendant's guilty plea, and pursuant to Rule 32.2(b)(2) of the Federal Rules of Criminal Procedure, the Court will issue a Preliminary and Final Order of Forfeiture for the asset listed above. The defendant hereby waives any right to notice of such Preliminary and Final Order of Forfeiture. The defendant further consents and agrees that the Preliminary and Final Order of Forfeiture shall issue and become final as to the defendant prior to sentencing and agrees that it shall be made part of the defendant's sentence and included in the judgment pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure. No ancillary proceeding is required to the extent that the forfeiture consists of a money judgment pursuant to Rule 32.2 (c)(1).

42. The defendant acknowledges that the defendant understands that the forfeiture of property is part of the sentence that may be imposed in this case and waives any failure by the Court to advise the defendant of this, pursuant to Rule 11(b)(1)(J), at the time the guilty plea is accepted. Forfeiture of the defendant's property shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

## X.  TOTAL AGREEMENT AND AFFIRMATIONS

43.  This plea agreement represents the total agreement between the defendant, GREGORY GIBBONS, and the government. There are no promises made by anyone other than those contained in this agreement. This agreement supersedes any other prior agreements, written or oral, entered into between the government and the defendant.

JAMES P. KENNEDY JR.
Acting United States Attorney
Western District of New York

BY:  *signature*
KATHLEEN A. LYNCH
Assistant United States Attorney

Dated: July 20, 2017

*signature*
ELIZABETH R. MOELLERING
Assistant United States Attorney

Dated: July 20, 2017

I have read this agreement, which consists of 19 pages. I have had a full opportunity to discuss this agreement with my attorneys, TERRENCE M. CONNORS, ESQ. I agree that it represents the total agreement reached between myself and the government. No promises or representations have been made to me other than what is contained in this agreement. I understand all of the consequences of my plea of guilty. I fully agree with the contents of this agreement. I am signing this agreement voluntarily and of my own free will.

_____  
GREGORY GIBBONS  
Defendant

Dated: July 20, 2017

_____  
TERRENCE M. CONNORS, ESQ.  
Attorney for the Defendant

Dated: July 20, 2017