UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

v.

Case # 16-CR-41-FPG

DECISION AND ORDER

GREGORY GIBBONS,
                    Defendant.

## INTRODUCTION

In July 2017, Defendant Gregory Gibbons pleaded guilty to one count of conspiracy to commit wire fraud affecting a financial institution, in violation of 18 U.S.C. § 1349. ECF No. 108, 109. In advance of sentencing, the parties submitted memoranda disputing the proper calculations for restitution and for loss under the Sentencing Guidelines. The Court resolves those disputes in this Decision and Order.

## DISCUSSION

### I. Restitution

The Court has already analyzed the issue of restitution in connection with the sentencing of co-defendant Laurence Savedoff. *See* ECF No. 316. Although the government continues to advance different restitution figures, it offers no persuasive reason why the Court should reconsider its prior order. Accordingly, the Court need not retread that ground, and restitution will be ordered against Gibbons consistent with the Court's November 20, 2019 Decision and Order (ECF No. 316).

### II. Guideline Loss

#### a. Legal Standard

To determine loss under the Sentencing Guidelines, the Court must engage in a different analysis from that employed to calculate restitution. *See United States v. Zangari*, 677 F.3d 86,

1

92 n.8 (2d Cir. 2012) (citing cases for proposition that loss and restitution involve "different methods of calculation" and are used for "different purposes"). "Under U.S.S.G. § 2B1.1(b)(1), the base offense level for various crimes resulting in financial loss is enhanced based on the amount of loss." *United States v. Lacey*, 699 F.3d 710, 713 (2d Cir. 2012). Loss "is the greater of actual loss or intended loss," intended loss being "the pecuniary harm that was intended to result from the offense," and actual loss being "the reasonably foreseeable pecuniary harm that resulted from the offense." *United States v. Skys*, 637 F.3d 146, 153 (2d Cir. 2011) (emphases omitted). Furthermore, a defendant receives credit against loss in the amount "the victim has recovered at the time of sentencing from disposition of the collateral" or, if the collateral has not been sold, "the fair market value of the collateral as of the date" of the guilty plea. U.S.S.G. § 2B1.1 app. note 3(E)(ii), (iii). The government must prove relevant sentencing facts by a preponderance of the evidence, *see United States v. Salazar*, 489 F.3d 555, 557-58 (2d Cir. 2007), and the sentencing court need only make a "reasonable estimate of the loss." *Lacey*, 699 F.3d at 719.

   b. **Undisputed Losses**

The parties agree on the losses that resulted from all but two of the transactions. Therefore, the Court adopts those undisputed losses:

1. **1732 Unionport Road:** $30,763.13
2. **4087 Edson Avenue:** $22,734.37
3. **814 Faile Street:** $103,308.23
4. **949 East 231st Street:** $97,222.92
5. **816 Faile Street:** $108,801.61
6. **3985 Carpenter Avenue:** $122,819.25

2

### c. Disputed Losses

**7. 1728 Unionport Road**

The Court discussed this property in its previous Decision and Order:

> As part of the scheme in which [Gibbons] was involved, Jimmy Isaac purchased [this] property in Fall 2008. The recorded mortgage shows a principal loan balance of $569,415. At some point, Bank of America obtained the loan and in February 2015, it executed a loan modification agreement with Isaac. Pursuant to that modification, the principal loan balance was reduced to $318,250.

ECF No. 316 at 7-8 (citations omitted). Gibbons acted as the mortgage broker in this transaction and provided false documentation in support of the borrower's loan application.

The government and Probation calculate the loss resulting from this transaction as $251,165, which represents the amount Bank of America forgave as part of the loan modification ($569,415 minus $318,250). ECF No. 318 at 4. Gibbons objects, arguing (1) the loan modification was not a reasonably foreseeable harm resulting from the offense, and (2) per this Court's restitution order, the government failed to prove "the nature or extent of Bank of America's loss." ECF No. 320 at 3-4.

The Court agrees with the government and Probation concerning actual loss. This Court has already held with respect to co-defendant Savedoff that—particularly given his familiarity and sophistication with these types of transaction—loan modification was a reasonably foreseeable loss resulting from the mortgage-fraud scheme. *See* ECF No. 280 at 8-9; *see also United States v. Wendlandt*, 714 F.3d 388, 395 (6th Cir. 2013) (concluding the loss due to loan modification "constitutes a reasonably foreseeable, calculable loss . . . that falls squarely within the definition of actual loss under [the Sentencing Guidelines]"). The same logic applies to Gibbons.

Gibbons's second argument fares no better. As the Court noted, loss and restitution are calculated by different methods and are used for different purposes. *See Zangari*, 677 F.3d at

3

92 n.8. In the prior order, the Court concluded that restitution should not be ordered as to Bank of America because it was unclear what price it paid for the loan and, therefore, how much it lost when it modified the loan. *See* ECF No. 316 at 8-9. That was a critical omission, because the overriding goal of restitution is to make victims whole without awarding them a windfall. *See United States v. Thompson*, 792 F.3d 273, 277 (2d Cir. 2015). By contrast, a loss calculation for Guidelines purposes is not focused on "harm to any particular victim" but on the "*total* loss resulting from the commission of the [offense]." *United States v. Appolon*, 695 F.3d 44, 67 (1st Cir. 2012). "Thus, provided that the total actual loss is reasonably foreseeable, its apportionment as between the original lender and a successor lender (or other downstream purchaser) does not matter." *Id.*

Accordingly, the fact that the purchase price of the loan is unknown does not mean that the Court cannot make a reasonable estimate of the loss resulting from the offense. To the contrary, because it is established that the original principal balance was $569,415 and that the loan modification reduced the principal balance to $318,250, it is reasonable to conclude that there was a loss of principal in the amount of $251,165, regardless of whether that loss was incurred by Bank of America, a predecessor lender, or both.[1] Furthermore, the modification made the loss permanent insofar as it could not be recovered by the eventual sale of the collateral. *See Wendlandt*, 714 F.3d at 395.

Therefore, the Court concludes that the actual loss for this transaction is $251,165.

---

[1] An illustration may be helpful. Assume that Bank of America purchased the loan for $418,250. This would mean that the predecessor lender took a loss of $151,165 ($569,415 minus $418,250). When Bank of America modified the loan to $318,250, it would have lost $100,000. Between them, the lenders would have lost $251,165—the difference between the original unpaid principal balance and the principal balance post-modification. In short, the Court can reasonably estimate that between the loan modification and any previous transfers, $251,165 of principal was lost.

### 8. 823 East 218th Street

This property has a complicated transaction history. "In Fall 2008, co-defendant Daniel Badu purchased the property through a mortgage obtained by fraud and misrepresentation." ECF No. 316 at 9. Gibbons acted as the mortgage broker and falsified documentations in support of the loan application. "Metlife was the original lender, but the loan was soon sold to several downstream purchasers." *Id.* After the restitution hearing for co-defendant Savedoff, the Court concluded that the government had only supplied a "tenuous link" between the alleged losses resulting from this transaction and the wrongful conduct. *Id.* at 11-12. In particular, the Court found that the chain of title the government identified was inconsistent with public records, and it therefore declined to award restitution to the putative victim-lenders. *Id.* at 12-13.

The government stands by its original loss calculations. *See* ECF No. 318 at 7-9. Gibbons argues that the proper loss calculation is $55,278.33, which is the principal loan balance ($684,278.33) minus the fair market value of the collateral at the time of the plea ($629,000). ECF No. 306 at 5-6.

The Court agrees with Gibbons. As the Court noted in the restitution order, the government's evidence as to this transaction is unclear and unpersuasive. Thus, for the same reasons it denied restitution, the Court is not convinced to attribute losses to the lenders that the government identifies.

Nevertheless, even if the particular victims are not identifiable, the Court can reasonably estimate that there was at least a total loss of $55,278.33. That is, simply given the difference between the original principal balance and the fair market value of the collateral, the Court can attribute $55,278.33 of lost principal to the scheme.[2] *See Appolon*, 695 F.3d at 67-68.

---

[2] The Court recognizes that this loss figure is different from that found with respect to co-defendant Savedoff as to this transaction. This is a result of the restitution hearing, which provided the Court with a

## CONCLUSION

For the foregoing reasons, the Court finds and orders as follows:

| TRANSACTION | ALLEGED VICTIM(S) | GUIDELINE LOSS | RESTITUTION ORDERED (18 U.S.C. § 3663A(b)(1)) | MANNER OF PAYMENT (18 U.S.C. § 3664(f)(3)) |
|---|---|---|---|---|
| 1732 Unionport Rd. | M&T Bank | $30,763.13 | $30,763.13 to HUD as indemnitor of M&T Bank | Monetary Payment |
| 949 East 231st Street | Suntrust Bank | $97,222.92 | $97,222.92 to HUD as indemnitor of Suntrust Bank | Monetary Payment |
| 3985 Carpenter Avenue | CitiBank | $122,819.25 | $122,819.25 to CitiBank | Monetary Payment |
| 4087 Edson Avenue | M&T Bank | $22,734.37 | $637,734.37 to M&T Bank | In-Kind Payment to be credited upon liquidation, sale, or receipt of collateral |
| 814 Faile Street | M&T Bank | $103,308.23 | $570,308.23 to M&T Bank | In-Kind Payment to be credited upon liquidation, sale, or receipt of collateral |
| 1728 Unionport Rd. | Bank of America | $251,165 | No attributable loss; no restitution ordered. | N/A |
| 823 East 218th Street | Metlife, JPMorgan Chase, Preston Ridge | $55,278.33 | No attributable loss; no restitution ordered. | N/A |
| 816 Faile Street | JPMorgan Chase | $108,801.61 | No attributable loss; no restitution ordered. | N/A |
| | | **TOTAL GUIDELINE LOSS:** $792,092.84 **OFFENSE-LEVEL INCREASE:** 14 **BASE OFFENSE LEVEL:** 20 | **TOTAL LOSS FOR RESTITUTION:** $1,458,847.90 | **TOTAL CASH PAYMENTS ORDERED:** $250,805.30 **TOTAL IN-KIND PAYMENTS ORDERED:** 2 |

---

fuller understanding of the evidence on which the government's calculations were based. This discrepancy is not material, however, since both Savedoff and Gibbons are subject to the same offense-level increase under § 2B1.1.

In addition, for purposes of restitution, the Court orders that:

1. CitiBank shall receive first priority before HUD if Gibbons makes a partial monetary payment.

2. The Court imposes a special condition of supervision requiring Gibbons to notify various parties upon the foreclosure or liquidation of the properties at issue. *See, e.g.*, ECF No. 317 at 5. The Court presumes that the government will notify Gibbons to the extent it learns pertinent information regarding the status of those properties, but it is ultimately Gibbons's responsibility to ensure that he receives credit upon disposition of the properties.

IT IS SO ORDERED.

Dated: January 15, 2020
Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court